## SUPREME COURT.

### The People agt. John Mauch.

On an indictment for *keeping a disorderly house,* the character of the house cannot be proved by *general reputation.*

No one should be convicted of any criminal offence upon *mere reputation* or rumors.

*New York General Term, Nov.,* 1862.

Writ of error to the general sessions on exceptions taken to a judgment of conviction for keeping a disorderly house.

Nelson J. Waterbury, *for people.*
E. W. Dodge, *for defendant.*

By the court, Ingraham, P. Justice. The prisoner was indicted for keeping a disorderly house. On the trial, the prosecution offered to show the character of the house in which the defendant lived, from reputation. This was

objected to, but admitted, and the prisoner's counsel excepted.

The point involved is whether the character of the house can be proved by general reputation. Formerly, the rule was settled by *Radcliff, Mayor, in Rathbone's case,* (1 *vol. City Hall Recorder,* 26,) that particular acts were not admissible to prove a house disorderly, but that it must be proved by general reputation of the house.

This decision has, I believe, been very generally followed in this city since.

In Pennsylvania, in *Commonwealth* agt. *Stewart,* (1 *Sergeant & Rawle,* 342,) the contrary doctrine was held.

I have never been able to understand the principle upon which such a rule was established. Where the question is as to character, there the rule has been settled, that it is to be proven by the reputation in which a person is held by his neighbors. Yet there is no judge who has not at times seen the injustice of this rule, in cases where witnesses have become exasperated at individuals from some private cause, often of mere non-payment of debts, and who on cross-examination, have shown their opinion of a man's character has been formed from such causes rather than from his general reputation. There is no other offence in which general reputation is considered sufficient to convict a man of crime, and when we reflect how such reputation is made up, not from proof of facts, nor from the relation of actual occurrences, but rather from gossip, tale-bearing, prejudices, and other similar means, we may well hesitate at the propriety of permitting such evidence to be sufficient to blast a man's character, or to consign him to a prison. The difficulty seems to be in ascertaining a proper mode of proving such facts as will make out the character of a house. I see no difficulty in submitting to the jury under oath the same evidence upon which individuals out of doors, not under oath, make up a man's general character. One

hears one story, another hears another story, and these are repeated from one to another until they become changed into proof of general reputation. Instead of taking it second, third, or fourth hand from others, it would be better to submit to the jury the series of occurrences at the house, from which they could form the opinion, whether the occurrences there were such as to warrant the conclusion that the general management of the house was such as to bring it within the description of a disorderly house.

Such was in fact the course of the evidence in this case. The prosecution proved that prostitution and fighting occurred there, and the defendant produced evidence to the contrary.

If a house was proved to have been used for such purposes, that rows and fights were of frequent occurrence, that noise sufficient to disturb the neighborhood was often permitted, or matters of a similar character, a jury would be much better able to form the opinion as to the character of the house, than from opinions of policemen who had no personal knowledge of the occurrences from which they formed their opinions.

In the case of receiving stolen goods, the general reputation of the house, that it was frequented by thieves, has been held inadmissible. The rules of evidence in criminal are generally the same as in civil cases, and whatever difference exists, it is that the caution in criminal cases requires a stricter rule to be enforced than in civil actions.

In civil suits, reputation is not sufficient to sustain a cause of action. It will not prove a partnership or a custom, without knowledge on the part of the witness of such custom being acted upon, nor of agency, and many other matters which might be enumerated.

In the *People* agt. *Carey*, (4 *Park. C. Rep.*, *p.* 238,) may be found a case where a keeper of a disorderly house was

People agt. Mauch.

convicted upon proof of the various occurrences from which the opinion as to the character of the house is formed, and such opinion may be much better formed from witnesses who testify, than from the opinions of those who give no reasons therefor.

No one should be convicted of any criminal offence upon mere reputation or rumors, and the evidence in this case should not have been admitted.

In *Wharton Cr. Law*, *sec.* 661, it is said that evidence of general reputation as to a gaming house, or disorderly house, is not admissible, and at section 3,290, it is said that proof of the character of the women who frequent such a house, the character and behavior of the men, and the effects upon the neighborhood, is admissible. The 2,393d section does not establish any different rule. It says that the particular acts need not be proven, but that common reputation as to the defendants and the character of the houses they keep, and the persons visiting them, is admissible. This rule is stated to be on the case of *United States* agt. *Stevens*, (4 *Cranch*, *C. C. Rep.*, 341;) an examination of that case will show that no other evidence than reputation of the character of the persons who frequented the house was admitted; and in the *United States* agt. *Jardine*, (4 *Cranch*, *C. C. R.*, *p.* 338,) it was expressly held that such general evidence was not admissible.

The conviction should be reversed and a new trial ordered in the sessions.